UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRYAN O.,

        Plaintiff,

        v.                                     **DECISION AND ORDER**

                                            22-CV-932S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Bryan O.[1] brings this action, pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his applications with the Social Security Administration on March 13, 2020. Plaintiff alleged disability beginning November 2, 2011, due to type 2 diabetes mellitus with hyperglycemia, obesity, hypertension, panic disorder, major depressive disorder, generalized anxiety disorder, agoraphobia, and post-traumatic stress disorder ("PTSD"). For his disability insurance application, Plaintiff's date of last insured was March 31, 2015 (R. at 85, 17); thus, the relevant period for this Title II

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

claim is from November 2, 2011, to March 31, 2015.[2]  Plaintiff's Title XVI claim is not dependent upon the date last insured but runs to the date of the Commissioner's final decision on September 30, 2021.[3]

3.      Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

4.      On August 23, 2021, ALJ Elizabeth Ebner held a telephonic hearing (due to the COVID-19 pandemic) at which Plaintiff—represented by counsel—and Vocational Expert James Breen appeared and testified.  (R.[4] at 30-54, 15.)  At the time of the hearing, Plaintiff was a 50-year-old man with a high school education and prior relevant work experience as a distribution clerk, warehouse worker, and production assembly clerk (R. at 24, 23).

5.      The ALJ considered the case *de novo* and, on September 30, 2021, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.  (Docket No. 1.)

6.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 14.)  Plaintiff filed a Notice of No Reply

---

[2]Under Title II, "a period of disability cannot begin after a worker's disability insured status has expired," Woods v. Colvin, 218 F. Supp.3d 204, 207 (W.D.N.Y. 2016) (citing SSR 83–10, 1983 WL 31251, at *8 (1983)).  A claimant is entitled to benefits under Title II "if he is able to prove disability existed prior to his date last insured," King v. Colvin, No. 14-CV-829S, 2016 WL 1165309, at *3 (W.D.N.Y. Mar. 25, 2016).  Title XVI benefits, however, are not tied to a claimant's work history or the date last insured.  Jaquish v. Comm'r, No. 8:16-CV-0399 (GTS), 2017 WL 3917019, at *6 (N.D.N.Y. Sept. 6, 2017).

[3]The ALJ's September 30, 2021, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

[4]Citations to the underlying administrative record are designated as "R."

on May 30, 2023 (Docket No. 15), stating that he relied upon arguments made in his original brief (id.).  This Court takes the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion will be denied, and Defendant's Motion will be granted.

7. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

8. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153

(S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11.  Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

12.  The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the November 2, 2011, onset date. (R. at 17.) At Step Two, the ALJ found that Plaintiff has the following severe impairments:  type 2 diabetes, obesity, hypertension, panic disorder, major depressive disorder, generalized anxiety disorder, agoraphobia, and PTSD. (R. at 17) At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

13.  Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work, but Plaintiff is limited to simple and routine tasks, with occasional changes in the work setting, occasional interaction with supervisors and

5

coworkers, and no interaction with the public even though he can be within the same vicinity. (R. at 19.)

15. At Step Four, the ALJ found Plaintiff could perform any past relevant work as warehouse worker or a production assembly clerk. (R. at 23.) At Step Five, the ALJ also found that there are other jobs beyond his past work that exist in significant numbers in the national economy that Plaintiff could perform. The ALJ alternatively posed hypotheticals to the Vocational Expert of a claimant similar in age, education, RFC, and work experience to Plaintiff, and the expert opined that this hypothetical claimant could work as a janitor, dishwasher, or hand packager, all medium exertion work. (R. at 24-25.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 25.)

15. Plaintiff first argues that the RFC determination is not supported by substantial evidence because the ALJ did not develop the record for his Title II application (Docket No. 9, Pl. Memo. at 14-17). Second, as for his Title XVI application, Plaintiff claims that the ALJ failed to reconcile the RFC findings with the persuasive evidence of state agency review psychologist Dr. L. Dekeon (id. at 17-22). Third, Plaintiff challenges the mental RFC finding because the ALJ improperly rejected the opinion of Dr. Clementine Porcelli, Ph.D. (id. at 23-28). Finally, Plaintiff claims that the ALJ did not evaluate the persuasiveness of the assessment of treating Physician's Assistant Julie Schmidt (id. at 29-30). This Court, however, rejects these arguments.

16. Under the Social Security standards applicable for Plaintiff's post-March 27, 2017, application, the agency considers the persuasiveness of a medical opinion. See, e.g., 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The agency does not defer or give any specific evidentiary weight to any medical opinion, id. §§ 404.1520c(a), 416.920c(a), but

considers the supportability and consistency of the opinions as the most important factors in assessing the persuasiveness of a medical opinion, id. §§ 404.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion.  Melissa F. v. Comm'r, No. 1:20-CV-1363 (WBC), 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive that opinion will be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

17. Plaintiff argues that the ALJ failed to develop the record for his Title II application because there were no functional medical opinions from November 2, 2011, to March 31, 2015, with the only functional assessment rendered on June 12, 2020, by consultative examiner Dr. Hongbaio Liu (R. at 532, 21).  He concludes that the ALJ had an obligation to develop the record on this point.  This Court disagrees; despite this limited record, remand to obtain further evidence (if it exists) is not necessary.

18. Plaintiff bears the burden of producing evidence in support of his application.  See Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015).  He also needs to explain how the missing medical opinion affects his case.  Cf. Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013).  "Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history."  Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

19. During the hearing, Plaintiff's counsel conceded that she only had medical evidence from April 24, 2013, and she could not obtain medical records before that date (R. at 41-42).  This is despite a treatment record from August 9, 2012 (subsequently

reported on May 15, 2020) (R. at 518). Plaintiff did not seek additional time or assistance from the ALJ to obtain medical opinions if they existed. This Court holds that the ALJ properly found there was no opinion evidence during the relevant period from November 2, 2011, to March 31, 2015 (R. at 22). This Court finds that the ALJ has sufficiently developed this record for the Title II coverage period.

20. Specifically, the ALJ did not rely merely upon her lay understanding of the medical record but considered opinions from three state agency doctors (Drs. Wang, Lawrence, and Dekeon) for the Title II period, consultative examiner Dr. Liu, and reports from Plaintiff's treating sources which were consistent with these opinions.

21. Reviewing medical evidence during this Title II period, Dr. Dekeon on June 24, 2020, opined that Plaintiff's claim should be denied due to insufficient evidence (R. at 62) as did Dr. Wang on December 11, 2020 (R. at 85-86). Based upon the totality of the evidence from that same period, Dr. Lawrence (also on June 24, 2020) found Plaintiff's physical impairments were nonsevere (R. at 69).

22. Dr. Liu conducted his examination and review of Plaintiff's medical history on June 12, 2020, revealed that Plaintiff suffered from high blood pressure since 2007, diabetes from 2013, and suffered from anxiety and depression from 2011 (R. at 533-36). Upon examination of Plaintiff, Dr. Liu concluded that Plaintiff did not have any limitation for any routine activities (R. at 536).

23. Furthermore, from the medical evidence during that period, on August 9, 2012, Dr. William Blymire examined Plaintiff and found he was in good health with normal range of findings (R. at 518-21).

24. Plaintiff merely now argues that the record ought to be completed without revealing what such augmented evidence (if it exists) would show or how supplementation of the record during this period would affect this case.

25. Accordingly, there was no need to further develop the record (if additional evidence exists) for the relevant Title II period. The ALJ had relevant medical opinions and evidence to make her determination. Therefore, remand to reopen the record is unwarranted; Plaintiff's Motion for Judgment on the Pleadings on this ground is denied, while Defendant's motion is granted.

26. As for his Title XVI application, Plaintiff argues that the ALJ (despite finding the opinion of state agency psychologist Dr. Dekeon to be persuasive) failed to incorporate Dr. Dekeon's moderate limitations in Plaintiff's ability to concentrate and interact with coworkers. This Court disagrees.

27. Dr. Dekeon found that Plaintiff was moderately limited in maintaining attention and concentration for extended periods; interacting appropriately with the public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers; and maintaining socially appropriate behavior (R. at 22, 74-75). Dr. Dekeon noted that Plaintiff had "moderate to marked limitation with regard to interacting adequately with supervisors, co-workers, and the public" (R. at 71). Dr. Dekeon also found that because Plaintiff's "ability to deal with co-workers and the public appears to be reduced, it is adequate to handle brief and superficial contact" (R. at 72). As such, Dr. Dekeon concluded that Plaintiff could perform simple tasks on low contact, low stress setting (R. at 22, 72).

28. The ALJ found persuasive the doctor's finding that Plaintiff could perform "simple work-related tasks and activities in low contact, low stress settings" while dealing with coworkers and the public in "brief and superficial contact" (R. at 22; see R. at 71-72) and incorporated them into the RFC determination limiting Plaintiff to "simple and routine tasks and occasional interaction with supervisors and coworkers, but no interaction with the public" (R. at 23).

29. Despite Plaintiff's contrary argument, the ALJ found that Plaintiff's impairment limited him to occasional interaction with coworkers. This is based upon Dr. Dekeon's opinion that Plaintiff's ability to deal with the public and coworkers appeared to be reduced (although he also characterized this as moderate to marked limitation) but could be managed through brief and superficial contact (R. at 23, 71, 72).

30. Accordingly, this Court rejects Plaintiff's argument and concludes that the ALJ properly incorporated Dr. Dekeon's opinion in the decision and addressed Plaintiff's limitation in dealing with coworkers.

31. As for his mental RFC, Plaintiff urges acceptance of Dr. Porcelli's opinion as support for finding stress limitations. Plaintiff raises several arguments to support giving greater weight to Dr. Porcelli's opinion. First, Plaintiff accuses the ALJ of cherry picking from his medical record, focusing only upon Plaintiff's appearance during Dr. Porcelli's examination while disregarding evidence of Plaintiff's anxiety, panic, depression, irritability, difficulty of sleeping, and impaired concentration. Second, Plaintiff faults the ALJ for overemphasizing that Plaintiff did not seek hospital treatment. Third, Plaintiff argues that the ALJ erred in giving credit to treating psychologists as opposed to Dr. Porcelli. Fourth, Plaintiff concludes that any of these errors is harmful because

Dr. Porcelli found Plaintiff's limitations to be more restrictive than the ultimate RFC. (Docket No. 9, Pl. Memo. at 23-28.)

32. Upon consideration of these arguments, this Court finds the ALJ had substantial evidence supporting her assessment of Dr. Porcelli's opinion, thus no harmful error occurred.

33. First, cherry picking is improperly crediting evidence that supports a finding while ignoring evidence favorable to the disability claimant. Starzynski v. Colvin, No. 1:15-cv-00940 (MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016); Javon W. v. Comm'r, 629 F. Supp. 3d 62, 67 (W.D.N.Y. 2022). "'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion." Strange v. Comm'r, No. 6:13-cv-527 (GLS/ESH), 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 6, 2014). "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." Younes v. Colvin, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

34. Dr. Porcelli examined Plaintiff on June 10, 2020, and found that he was cooperative and his manner of relating, social skills, and overall presentation was fair to poor (R. at 529). Dr. Porcelli then found that Plaintiff's attention and concentration was mildly impaired due to mental health issues (R. at 529). The doctor also found that Plaintiff had moderate limitation in understanding, remembering, and applying complex direction and instruction; moderate to marked limitation regarding interacting adequately

11

with supervisors, coworkers, and the public; and moderate limitation for sustained concentration and performing a task at a consistent pace (R. at 530).

35. The ALJ deemed Dr. Porcelli's opinion unpersuasive because it was not supported by her examination findings that Plaintiff was cooperative, dressed appropriately, and his posture and motor behavior were normal (R. at 22, 529). Further, the ALJ found that this opinion was inconsistent with the longitudinal record of Plaintiff denying psychiatric treatment or hospitalization (R. at 22, 527). This Court finds this conclusion consistent with the record.

36. This Court concludes that the ALJ has not cherry picked from this record. The ALJ did not ignore conflicting evidence regarding Plaintiff's psychological care. The ALJ, instead, considered Plaintiff's care over a seven-year period (R. at 20) and Dr. Porcelli's examination results (R. at 21). Further, the ALJ did not misread this evidence. By acknowledging Dr. Porcelli's examination results, the ALJ did not cherry pick.

37. Plaintiff lists instances from his treatment history of his declarations of his depression, anxiety, and other mental conditions that he claims the ALJ disregarded in not accepting Dr. Porceill's opinion (Docket No. 9, Pl. Memo. at 25; e.g., R. at 359, 613). He also cites counseling sessions with Best Self from October 2020 which revealed that Plaintiff's diagnosis of major depression remained unchanged (R. at 600, 613, 676, 694-95, 704-05).

38. The ALJ acknowledged this treatment history, noting that Plaintiff was not consistent in either taking medication and treatment, or attending counseling (R. at 20-21, 612). Further, the ALJ noted (from ECMC) that Plaintiff in August to September 2015 was noncompliant with a partial hospitalization program and did not appear there

12

particularly depressed, leading to a suspicion that Plaintiff was merely building a case for disability (R. at 20, 360).

39. Plaintiff's 2020 Title XVI application is governed by the post-March 17, 2017, regulations, 20 C.F.R. § 416.920c. Plaintiff argues that the ALJ did not appropriately weigh Dr. Porcelli's opinion. Under the applicable regulatory standard, however, the ALJ did not need to defer or "give any specific evidentiary weight, including controlling weight" to any medical opinion. Id. § 416.920c(a) (see R. at 21).

40. Plaintiff next argues that the ALJ erroneously relied upon Plaintiff's normal examination findings in rejecting Dr. Porcelli's opinion. He contends that this does not acknowledge his symptoms experienced outside of those brief instances. (Docket No. 9, Pl. Memo. at 24.)

41. Plaintiff, however, fails to provide instances where he experienced disabling symptoms between his examinations. He relies on Dr. Porcelli's opinion in which she noted Plaintiff's complaints of concentration difficulties and a difficulty in learning new material (R. at 528), even though this finding was based solely upon Plaintiff's subjective complaints.

42. The ALJ also properly relied on Plaintiff's lack of hospitalization records to reject Dr. Porcelli's findings. Although she noted that Plaintiff was diagnosed with panic disorder and major depressive disorder in April 2013 (R. at 20, 371), and considered Plaintiff's anxiety, panic, depression, difficulty sleeping, irritability, and impaired concentration (R. at 20, 359, 362-63, 370-71), the ALJ also relied on the records from Plaintiff's partial hospitalization at Erie County Medical Center in 2015, which indicate that Plaintiff was noncompliant with medications and it was "not clear that he is suffering from

major depressive disorder" (R. at 20, 359). These records demonstrate that Plaintiff did not appear "particularly depressed" and was suspected of building a case for a disability claim. (R. at 20, 360.) Plaintiff had not sought inpatient treatment since and he later denied being hospitalized (R. at 21, 527).

43. Plaintiff argues that it was improper for the ALJ to draw her own conclusions that certain types of treatment were appropriate. (Docket No. 9, Pl. Memo. at 25.)

44. This Court disagrees. Because Plaintiff's claim of disability can be undermined by the extent and type of treatment Plaintiff sought (or did not seek) as shown by the extent or absence of evidence of psychological treatment, see Navan v. Astrue, 303 F. App'x 18, 20 (2d Cir. 2008); Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989), the ALJ can consider the type and frequency of treatment in making her ultimate RFC determination.

45. Here, Plaintiff's mental health treatment record consists of treatment for depression on November 13, 2012, March 21, 2013, May 11, and July 17, 2015 (R. at 473, 370, 366, 362-63); and the partial hospitalization in August through September 2015 for suicidal ideation (R. at 357-60). It was not until February 10, 2020, when Plaintiff next underwent mental health treatment (R. at 556), then continued it at Best Self on July 23, 2020 (R. at 575-77).

46. The ALJ thus properly considered the extent and consistency of Plaintiff's treatment. The ALJ did not conclude how Plaintiff should have been treated for his ailments to establish disability.

47. Plaintiff next argues that the ALJ unfairly credited the opinions of non-treating psychologists who did not examine him over that of Dr. Porcelli who did examine him.

48. This Court, however, holds that Plaintiff applied the wrong standard to his Title XVI application. Plaintiff cites a pre-March 27, 2017, case, cf. Ransome v. Colvin, 164 F. Supp. 3d 427, 431 (W.D.N.Y. 2016), for the alleged error of the ALJ elevating the opinion of state agency reviewer over an examining consultant (Docket No. 9, Pl. Memo. at 26).

49. The ALJ properly weighed the medical opinions presented for Plaintiff's post-March 27, 2017, application. Under those applicable standards, it is the supportability and consistency of the medical opinions that determines their persuasiveness. 20 C.F.R. § 416.920c(b)(2), (c)(1)-(2). A lesser factor is the frequency of examinations by the medical source and the ALJ need not explain how the frequency of examination is considered. Id. § 416.920c(c)(3)(ii), (b)(2). Furthermore, the ALJ does not defer or give any specific evidentiary weight to any medical opinion, whether consultant or non-treating source. Id. § 416.920c(a). The opinions from state agency reviewers are not rendered less persuasive merely from their source unless these opinions are not internally supported or not consistent with the medical record.

50. Furthermore, "contrary to Plaintiff's argument, an ALJ is entitled to rely on the findings of non-examining physicians when determining a claimant's RFC under certain circumstances." Jeffords v. Berryhill, No. 17-cv-77, 2018 WL 6177269, at *3 (W.D.N.Y. Nov. 27, 2018); see 20 C.F.R. § 416.927(e)(2)(iii); Hancock v. Barnhart, 308 F. App'x 520, 521 (2d Cir. 2009). Where the non-examining source's findings are supported

15

by substantial evidence, this opinion could "even override that of a treating source," Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993); Jeffords, supra, 2018 WL 6177269, at *3.

51. Plaintiff essentially seeks judicial reassessment of the contrasting opinions of the non-treating, non-examining psychologists (Drs. Dekeon and Brown) and a non-treating consultant (Dr. Porcelli) who examined Plaintiff on a single occasion. It is not the role of this Court to assess opinion evidence because the deferential standard of review prevents it. See Krull v. Colvin, 669 F. App'x 31, 33 (2d Cir. 2016).

52. It is the ALJ's duty to assess the persuasiveness of medical opinions without deferring to any one opinion. See 20 C.F.R. § 416.920c(a); Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016). This Court declines weighing conflicting opinions regardless of their sources; instead, this Court determines whether the ALJ's decision on these opinions is supported by substantial evidence in this record.

53. Further, the ALJ also relied upon the opinion of consultant Dr. Brown, who reviewed the psychological case file (including Dr. Porcelli's opinion) and found that Plaintiff was able to perform simple tasks in a low contact, low stress setting (R. at 104, 22). The ALJ adopted Dr. Brown's conclusions that, while Plaintiff's ability to deal with coworkers and the public was reduced, this ability was sufficient to handle brief and superficial contact and adequate to handle ordinary levels of supervision in a customary work setting (R. at 104, 22).

54. Thus, this Court finds that substantial evidence supports both the ALJ's mental RFC finding and her finding that Dr. Porcelli's opinion was unpersuasive. The ALJ

appropriately weighed the medical opinions in this record regardless of their source. Furthermore, there is no harmful error to warrant remand.

55. Finally, Plaintiff argues for remand because the ALJ did not evaluate P.A. Schmidt's questionnaire (R. at 748). Since that form is from a medical source, this Court agrees that Schmidt's questionnaire should have been considered by the ALJ. But such consideration would not change the ALJ's ultimate determination. See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010). Any error in failing to consider P.A. Schmidt's questionnaire is harmless because P.A. Schmidt never rendered an opinion.

56. A medical opinion is a statement from a medical source about what the claimant can still do despite claimed impairments and whether the claimant "have one or more impairment-related limitations or restrictions." 20 C.F.R. § 416.913(a)(2).

57. P.A. Schmidt repeated that she was unable to assess Plaintiff's limitations and would defer that assessment to a psychological therapist (R. at 749-51, 753-54).

58. Plaintiff nevertheless argues that this error is harmful because P.A. Schmidt diagnosed Plaintiff from bipolar disorder, anxiety, PTSD, diabetes, hypertension, gastroesophageal reflux disease, and alcohol dependence (R. at 748, 751), although P.A. Schmidt found that his prognosis was fair (R. at 748).

59. While P.A. Schmidt diagnosed Plaintiff, she expressly declined to state any limitations arising therefrom (R. at 748-54). Instead, P.A. Schmidt wrote that she was unaware of limitations or deferred that question to psychological therapist to make that assessment (R. at 749, 753, 754). P.A. Schmidt failed to make an opinion of Plaintiff's limitations.

60. This Court concludes that a remand to reconsider P.A. Schmidt's questionnaire would be futile and is not in order. By deferring to other, unidentified therapists, P.A. Schmidt has not rendered an opinion or stated what Plaintiff could do despite his impairments or diagnosis. A renewed request seeking P.A. Schmidt to state her opinion as to Plaintiff's limitations is pointless.

61. Accordingly, having reviewed the ALJ's decision and considering Plaintiff's arguments, this Court finds no error in the ALJ's determination. The ALJ sufficiently developed the record for Plaintiff's Title II application and properly assessed the medical opinions for his determination of Plaintiff's Title XVI application. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     February 23, 2024
           Buffalo, New York

                                                        s/William M. Skretny
                                                        WILLIAM M. SKRETNY
                                                        United States District Judge